IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LESTER B.,[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 7:17-CV-539 |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Lester B. ("Lester") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f. Specifically, Lester alleges that the ALJ failed to properly assess his impairments on a function-by-function basis and failed to properly assess his subjective statements. I find that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Lester's Motion for Summary Judgment (Dkt. No. 16), **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 18), and **DISMISSING** this matter from the docket.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Lester failed to demonstrate that he was disabled under the

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

1

Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Lester filed for SSI and DIB on February 19, 2014, alleging disability beginning on September 18, 2012. Administrative Record, hereinafter "R." 135–88. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 135–90. On May 5, 2017, ALJ Daniel Balutis held a hearing to consider Lester's disability claim. R. 38–89. Lester was represented by an attorney at the hearing, which included testimony from Lester and vocational expert Nadine Henzes. Id.

On June 5, 2017, the ALJ entered his decision analyzing Lester's claim under the familiar five-step process,[3] and denying Lester's claim for benefits. R. 24–33. The ALJ found that Lester

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. § 1382c(a)(3)(B).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

suffered from the severe impairments of mild scoliosis and multilevel stress related changes in the lumbar spine; mild to moderate cervical and thoracic spondylosis; moderate osteoarthrosis of the acromioclavicular joint(s); mild osteoarthrosis of the visualized glenohumeral joint(s); and chronic obstructive pulmonary disease. R. 27. The ALJ found that these impairments did not meet or medically equal a listed impairment. R. 29–30. The ALJ further found that Lester had the residual functional capacity ("RFC") to perform medium work, except that he can never climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs; can frequently kneel, crouch and crawl; can have frequent exposure to unprotected heights and moving mechanical parts; and can have frequent exposure to dust, odors, fumes and vibrations. R. 30.

The ALJ determined that Lester is capable of performing past relevant work as a perioperative assistant and personal care attendant, and thus is not disabled. R. 33. Lester requested that the Appeals Council review the ALJ's decision and submitted additional records in support of his claim. R. 10–20. On October 5, 2017, the Appeals Council denied Lester's request for review (R. 1–4), and this appeal followed.

## ANALYSIS

Lester claims that the ALJ erred by failing to conduct a function-by-function analysis, failing to properly evaluate his allegations regarding pain, "cherry-picking" the evidence, and failing to "build an accurate and logical bridge from the evidence to his conclusion." Pl. Br. Summ. J. p. 9–11. In support of his allegations, Lester simply recites social security case law and restates his subjective allegations with regard to his limitations. Lester does not identify any treatment records or other medical evidence in support of his claim that the ALJ failed to consider, or that the ALJ improperly weighed. Lester does not identify any subjective complaints that the ALJ failed to consider. Lester does not identify specific instances in this case

where the ALJ improperly applied the legal standards.  Rather, Lester's appeal simply asks this court to re-evaluate his subjective allegations and come to a different conclusion from that of the ALJ.  That is not the standard of a social security appeal.  The issue before me is whether the ALJ applied correct legal standards and his factual findings are supported by substantial evidence. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012).  Having reviewed the record, I find that the ALJ's decision is supported by abundant evidence.

## Medical Evidence

Lester received treatment at Piedmont Community Services beginning in December 2012 for complaints of depression and anxiety,[4] and continued to seek treatment with Piedmont through 2017.  Lester's visits to Piedmont focused on his mental health issues.  He routinely reported that he had no physical limitations and his objective examinations noted normal muscle strength, no atrophy, normal gait and ambulation. See R. 341–79, 389–99, 400–75.

Lester sought treatment from the Free Clinic of Franklin County in January through October 2013, and reported arthritis pain in his knees, elbows and hands, but received no treatment for pain or arthritis. R. 321–40.

On August 12, 2014, Lester underwent a consultative physical examination by William Humphries, M.D.  R. 381–84. Lester complained of aching in his knees that is worse with standing and walking.  Lester reported no surgery or injections in either knee, and that he could not walk more than an eighth of a mile on level ground without stopping. R. 381. Lester also complained of pain in multiple joints, including his shoulders, elbow, wrist and hand. Id. Lester noted intermittent low-back pain, worse with use, and occasional ankle pain. Id. Upon exam, Lester's neck and back were tender with palpation, and his straight leg raising was negative to 90

---

[4] The majority of Lester's medical records relate to treatment for mental conditions that are not at issue in this appeal. This opinion will only discuss Lester's treatment related to his physical complaints.

4

degrees. R. 382. He had moderate enlargement and diffuse tenderness in most of his upper extremity joints, and no tenderness or deformity in his lower extremity joints. Id. He was able to move on and off the exam table without difficulty; his Tinel's sign was negative; he had mild atrophy of both thenar regions of his hands; no tremor or involuntary movements; adequate fine manipulation; and mild antalgic gait on the right. Lester's strength was within normal limits in his four extremities and he had no muscle wasting. He had mild parasthesias to light touch of both feet. R. 383.

Dr. Humphries diagnosed diastolic hypertension; polyarthralgias, including shoulders, left elbow, knees and ankles with possible degenerative joint disease; degenerative joint disease mild to moderate in both hands; chronic lumbar strain; and mild chronic obstructive pulmonary disease. Id. Dr. Humphries concluded that Lester would be limited to sitting 6 hours in an 8 hour day; standing and walking 6 hours in an 8 hour day; lifting 50 pounds occasionally and 20 pounds frequently; occasional climbing, kneeling and crawling; and no restriction on stooping, crouching, heights or hazards. Id.

In July 2016, Lester complained of dyspnea on exertion. R. 487. Chest X-rays reflected COPD, as well as mild-to-moderate cervical spondylosis and facet arthropathy; mild-to-moderate anterior loss of height of mid and lower thoracic spine vertebral bodies; mild thoracic spondylosis; mild hyperkyphosis of the thoracic spine; moderate osteoarthrosis of the acromioclavicular joint(s); and mild osteoarthrosis of the visualized glenohumeral joint(s). Id. Lester began taking Advair in August 2016. R. 481.

Lester sought treatment at Carilion Cardiology Clinic on September 20, 2016, and noted that he stays active caring for a disabled relative. R. 499. On March 6, 2017, he had a normal physical exam, with full range of motion of his joints and no obvious joint deformities or

swelling. R. 511. He had 5/5 motor strength and normal sensation to fine touch throughout. R. 512. He was diagnosed with COPD and deconditioning, and he was advised to do a brisk walk daily for 20 minutes on level ground for conditioning. Id.

On August 26, 2014, state agency employee Luc Vinh reviewed Lester's records and determined that he is capable of lifting 50 pounds occasionally and 25 pounds frequently; standing and sitting for 6 hours in an 8 hour workday; occasionally climbing ramps and stairs; frequent kneeling, crouching and crawling, and never climbing ladders, ropes or scaffolds. R. 145. Mr. Vinh concluded that Lester was capable of performing his past relevant work as a perioperative assistant. R. 148. On December 12, 2014, state agency physician Jack Hutcheson, M.D., reviewed Lester's records and determined that he was capable of occasionally lifting 20 pounds and frequently lifting 10 pounds; standing and sitting for 6 hours in an 8 hour workday; occasionally climbing ramps, stairs, and stooping; frequent balancing, kneeling, crouching and crawling, and never climbing ladders, ropes or scaffolds. R. 173–74.

Lester worked part-time for a night cleaning service during 2016, and worked full-time as a personal care assistant until March 2016. R. 48. Lester testified that he was able to perform the personal care assistant job full-time due to accommodations allowing him to rest when necessary. R. 50. At the time of the administrative hearing, Lester continued to work for the night cleaning service 10 hours a week. R. 47. With regard to his pain, Lester testified at the administrative hearing that he has pain in his knees when walking or moving, but takes no pain medication to relieve his discomfort. R. 58. He sometimes has pain in his hands, left elbow, hip, and base of neck, and will take ibuprofen once a week. R. 58–59. Lester testified that he can walk a couple of blocks but will run out of breath going uphill (R. 60), and will rest about 20 minutes. R. 61. Lester testified that he can sit for about 30 minutes before getting restless, but

6

does not have "major pain, just discomfort." R. 62–63.  Lester testified that he can lift 25 pounds comfortably; that his left hands will sometimes get a little bit numb; and that he will occasionally have trouble holding things. R. 65.  Lester testified that he continues to smoke despite his COPD; he has no problems concentrating or focusing while reading; he watches television three hours a day; and he has no problems with personal care. R. 67–69. Lester testified that he performs laundry, dishes, and mows his grass with a push mower, although he feels sweaty and out of breath afterwards. R. 73–74. Lester lives with and cares for his disabled sister, including cooking, cleaning, monitoring her medication, paying bills. R. 75.

### Function-by-Function Analysis

Lester asserts that the ALJ failed to provide a function-by-function analysis, and specifically failed to address his inability to maintain static work posture and his need to lie down during the day.[5] Pl. Br. Summ. J. p. 9.  Under Social Security Ruling ("SSR") 96-8p, the ALJ must assess the claimant's work-related abilities on a function-by-function basis, including the functions listed in the regulations. SSR 96-8p, 1996 WL 362207.  Only after such a function-by-function analysis may an ALJ express an RFC "in terms of the exertional levels of work." Id. The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second

---

[5] Lester's brief in support of summary judgment at times also mentions his difficulty completing activities of daily life and difficulty concentrating and focusing. Pl. Br. Summ. J. p. 9.

7

Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Lester likens this case to the ALJ's decision in Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016), where the ALJ failed to sufficiently address the claimant's complaints of narcolepsy when developing the RFC. In Monroe, the claimant testified that he would lose consciousness about two or three times per day and would need to take several breaks during the day because of fatigue. The ALJ found that Monroe's sleep apnea and narcolepsy were severe impairments, and he concluded that Monroe's impairments could reasonably be expected to cause his claimed symptoms. However, the ALJ failed to make specific findings about whether Monroe's apnea or narcolepsy would cause him to experience episodes of loss of consciousness or fatigue necessitating breaks in work and if so, how often these events would occur. Rather, the ALJ simply concluded that Monroe was capable of light work and that Monroe's claimed symptoms were "not credible to the extent they are inconsistent with" the RFC the ALJ identified. Monroe, 826 F.3d at 188.

Here, Lester's difficulty maintaining a static work posture and his need to lie down were not severe impairments, but rather are complaints he made during the administrative hearing that the ALJ found unsupported by the record. Indeed, even Lester's testimony at the administrative

8

hearing does not fully support the allegations in his brief that he is unable to maintain a static work posture and must lie down during the day. Lester testified at the administrative hearing that he can stand for ten minutes at a time and sit for 30 minutes at a time (R. 61–62), and that he will usually rest once a day for 30 minutes because he gets worn out and his joints start to ache. R. 77. However, Lester also testified that he does not take naps during the day. R. 76.

The ALJ provided a detailed summary and analysis of Lester's impairments, medical records, testimony and opinion evidence. The ALJ discussed Lester's symptoms, his resulting limitations, the medical evidence, medical opinions, Lester's testimony, his credibility and conflicting medical evidence. R. 30–32. The ALJ noted Lester's testimony that his symptoms limit his ability to walk up and down hills, lift or push, balance, sit or stand for long periods, perform outdoor activities, squat, bend, walk long distances, kneel, climb stairs, complete tasks, and use his hands. R. 30. He noted Lester's testimony that chronic pain limits his ability to stand, walk, use his hands, and perform postural maneuvers, and he needs to shift positions frequently to reduce pain and take frequent breaks. R. 30–31.

The ALJ found that Lester's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medial evidence and other evidence in the record for reasons explained in this decision." R. 31.

The ALJ acknowledged Lester's complaints of pain but explained that the medical evidence reflected little treatment for pain. R. 31. The ALJ noted that Lester had very limited treatment history and little evidence of severe medically determinable impairments. R. 27. Lester complained of osteoarthritis, but did not receive any diagnosis or treatment. The ALJ

noted Lester's history of knee pain, but found no diagnosis in the record, and noted that Lester's X-rays were essentially negative. R. 28.

The ALJ found that Lester's very limited treatment history regarding musculoskeletal symptoms is not consistent with a finding of disability. R. 31. The ALJ noted that Lester only takes ibuprofen for pain, suggesting that it is not as severe as alleged, and he was not diagnosed or treated for his shortness of breath until July of 2016. Id. The ALJ noted that Lester's pulmonary function testing showed normal spirometry and no bronchiodialator response, and he still smokes cigarettes, suggesting that his shortness of breath does not cause him great concern. Id. The ALJ noted that Lester continues to work part time, cares for a disabled relative and "stay[s] active." R. 32. The evidence also reflected that Lester lost his last job when his client died and not because of his disabilities, that he currently worked part-time, and that he was trying to pick up more hours as a cleaner during the relevant period.

The ALJ reviewed Dr. Humphries' consultative opinion and gave it great weight, finding it supported by Lester's examination results and consistent with his limited treatment history. R. 32. The ALJ also reviewed the opinion of Mr. Vinh that Lester could perform a reduced range of medium work and gave it great weight. Id. The ALJ gave the opinion of Dr. Hutcheson that Lester could perform a reduced range of light work only partial weight, finding that Dr. Hutcheson did not cite adequate evidence of exertional limitations more restrictive than those noted by Dr. Humphries and Mr. Vinh. Id.

Substantial evidence supports the ALJ's conclusion that Lester's subjective complaints did not require additional limitations in the RFC beyond those recommended by Dr. Humphries. An ALJ's narrative discussion of all of the evidence in support of his findings in determining a claimant's RFC is sufficient to comply with the function-by-function analysis under SSR 96-8p.

10

Here, the ALJ fully discussed Lester's medical evidence, his allegations regarding his symptoms and limitations, and the medical opinions in the record. R. 30–32. The ALJ gave Lester a carefully considered RFC, which is supported by Dr. Humphries' opinion, the only examining doctor to provide a functional capacity opinion in the record. Thus, unlike in Monroe, the ALJ gave a sufficient explanation of why Lester's complaints of inability to maintain a static work posture and need to rest during the day did not translate into limitations in the RFC.

### Subjective Allegations of Pain

Lester also asserts that the ALJ failed to properly consider whether his pain is so continuous or severe that it prevents him from working a full eight-hour workday, and asserts that the ALJ overemphasized the lack of objective evidence in the record when determining his RFC. Lester asserts that the ALJ failed to build the required "accurate and logical bridge from the evidence to his conclusion." Pl. Br. Summ. J. p. 10–14. In support of these arguments, Lester asserts that the record "is replete with [his] subjective complaints of pain." Pl. Br. Summ. J. p. 13. Lester points to a medical record dated August 12, 2014, noting his "a history of bilateral knee pain" (R. 385), and his testimony at the administrative hearing that he "was experiencing pain in his joints and knees" (R. 76) and "experiences pain in his hands, left elbow, and left hip" (R. 58–59). Pl. Br. Summ. J. p. 13.

Lester's subjective allegations of pain and limitations are not conclusive. Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims,[6] SSR 16-3P, 2017

---

[6] In March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016).

11

WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).[7] First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[8] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

Here, the ALJ followed the required two step process, and determined first that there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce Lester's symptoms, such as pain. R. 31. The ALJ set forth Lester's subjective complaints about the intensity, persistence and limiting effects of his symptoms in detail in his opinion. R. 30–31. In step two, the ALJ concluded that Lester's statements concerning the intensity, persistence and limiting effects of his symptoms are not supported by the record. R. 31. Specifically, the ALJ noted that Lester had minimal abnormal physical

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

[8] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

findings on examination, received essentially no treatment for pain or arthritis, and testified that he took only ibuprofen for pain. R. 31.

The ALJ did not end his analysis of Lester's subjective allegations of pain solely upon the lack of objective evidence, but also noted that Lester's daily activities, his substantial gainful activity during the alleged period of disability, his current part-time work, and his continued smoking all discounted his complaints of disabling pain. R. 31–32.

Lester asserts that the ALJ failed to "qualify" Lester's activities of daily living, and failed to include the context of his ability to work part time, care for his sister and stay active. Pl. Br. Summ. J. p. 13. Lester asserts that his activity of caring for his sister is limited to cooking, cleaning, and ensuring that she takes her medicine, and that sweeping and vacuuming causes pain in his elbow and shoulders. Id. at 14. Lester asserts that the ALJ ignored the evidence that he had very limited duties in his job caring for an elderly woman and had special accommodations when he worked that full time job during the alleged period of disability. Id. However, the ALJ properly considered Lester's daily activities along with other evidence in the case. The daily activities, part and full-time work referenced by the ALJ are supported by Lester's testimony and the medical records. The record reflects that Lester worked substantial gainful activity for at least a year during the alleged period of disability, also worked a cleaning job at night, and acts as his disabled sister's primary caretaker. R. 46–53, 75, 428. Lester continued to work at a part-time cleaning job through the time of the administrative hearing. R. 47. It is apparent that the ALJ reviewed the record regarding Lester's impairments in detail and measured his statements about the severity of his symptoms and limitations against the objective evidence. This is not a case where the ALJ improperly substituted his own observations and medical judgments in place of the record evidence. Considering Lester's treatment notes,

13

together with the medical opinions, substantial evidence supports the ALJ's conclusion that objective medical evidence undermined Lester's statements regarding the extent of his limitations. See Ladda v. Berryhill, No. 17-1366, 2018 WL 5096065 (4th Cir. Oct. 18, 2018) (upholding the ALJ's credibility determination because the ALJ explained his reasoning and weighed the claimant's subjective statements against other evidence.)[9]

Thus, the ALJ discussed both the objective medical evidence and Lester's subjective complaints and alleged symptoms. The ALJ incorporated the relevant evidence into his narrative discussion and the resulting RFC and constructed "an accurate and logical bridge" from the evidence in the record to his conclusion. I am not left to guess about how the ALJ arrived at that conclusion. Monroe, 826 F. 3d at 189 (quoting Clifford, 227 F.3d at 872). I find that the ALJ satisfied his responsibility under SSR 96-8p, and substantial evidence supports his RFC finding.

## RECOMMENDED DISPOSITION

For the foregoing reasons, I recommend **DENYING** Lester's Motion for Summary Judgment, **GRANTING** the Commissioner's Motion for Summary Judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected

---

[9] In Ladda, as here, the claimant asserted that the ALJ cherry-picked facts to support a finding of nondisability. Id. at *3. The court noted, "when we review an ALJ's credibility determination, we do not 'substitute our judgment for that of the ALJ,' and here, the ALJ cited adequate evidence from the record to support his conclusion that Ladda's statements were not entirely credible." Id. at *3, n. 3 (internal citations omitted). Likewise, the ALJ in this case cited adequate evidence to support his conclusion that Lester's statements were not entirely credible.

to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

      Enter: January 22, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge