CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 21 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LESTER B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:17-CV-00539 |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) By: Michael F. Urbanski |
| Acting Commissioner of Social Security, | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on January 22, 2019, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Lester B. ("Lester") has filed objections to the report, to which the Commissioner responded, and this matter is now ripe for the court's consideration.

### I. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with

sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.); see Midgette, 478

2

F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made.*'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates his previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, his re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## III. Plaintiff's Objections[1]

Lester raised two arguments before the magistrate judge on summary judgment—that the ALJ's findings were not supported by substantial evidence and that the ALJ's assessment of Lester's allegations was not supported by substantial evidence. In his objections to the

---

[1] Detailed facts about Lester's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 22) and in the administrative transcript (ECF No. 9). As such, they will not be repeated here.

4

report and recommendation, Lester takes issues with certain of the magistrate judge's findings as to each of these two arguments.

**A. Need for Breaks as part of Residual Functional Capacity (RFC) Assessment**

Lester objects to the magistrate judge's conclusion that the ALJ adequately considered Lester's ability to maintain a static work posture and his need to lie down during the day. The magistrate judge found that neither Lester's difficulty maintaining a static work posture nor his need to lie down were severe impairments, but were complaints he made during the administrative hearing that the ALJ found unsupported by the record. Lester objects that although the ALJ found that Lester had severe skeletal impairments[2] and chronic obstructive pulmonary disease, he failed to make specific findings as to whether the impairments would cause pain or fatigue necessitating breaks in work and if so, how often the events would occur. He cites Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016), where the Fourth Circuit remanded a case after an ALJ found that a claimant had severe impairments of sleep apnea and narcolepsy but failed to make specific findings as to whether the impairments could cause him to lose consciousness or cause fatigue necessitating breaks in the work day.

Lester testified at the hearing that usually he would lie down and rest once a day for thirty minutes because he would become tired and his joints would start to ache. R. 77-78. The ALJ noted that Lester alleged shortness of breath, bilateral leg and knee pain, fatigue, headaches, joint pain in his fingers and elbows, a heart murmur, low back pain, left ankle pain,

---

[2] The ALJ found that Lester had the following severe impairments: mild scoliosis and multilevel stress related changes to the lumbar spine; mild to moderate cervical and thoracic spondylosis; moderate osteoarthritis of the acromioclavicular joints; mild osteoarthrosis of the acromioclavicular joints, mild osteoarthritis of the visualized glenohumeral joints; and chronic obstructive pulmonary disease ("COPD"). R. 27.

5

depression, and anxiety. He also acknowledged that Lester testified to chronic pain that limited his abilities to stand, walk, use his hands, and perform postural maneuvers, and that he said he needs to take breaks and shift positions frequently to reduce pain. R. 31.

However, the ALJ concluded that Lester's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record. Id. The ALJ noted that in 2013 Lester reported arthritis pain in his knees, elbows, and hands, but received essentially no treatment for pain or arthritis and a physical examination was unremarkable. Id. In July 2016 X-rays revealed mild to moderate cervical spondylosis and mild to moderate osteoarthritis of the AC joints and glenohumeral joints. He also reported shortness of breath for which he was prescribed Advair. Id. Later that year he was evaluated for shortness of breath but reported no back pain, joint pain, myalgias, or neck pain. His physical examination was unremarkable and he had a normal range of motion. Id. Lester also reported taking only Ibuprofen for pain, suggesting that his pain was not as severe as alleged. In addition, pulmonary function tests showed normal spirometry and no bronchodilator response. He was still smoking cigarettes, suggesting that his shortness of breath did not cause him great concern. The ALJ found that the evidence in the record supported a finding that Lester could do medium work with appropriate environmental limitations. Id.

The ALJ also noted that Lester continued to work part time, care for a disabled relative, and "stay active." He had lost his previous full time job as a caregiver because his client died, not because of his disability, and was interested in working more hours as a cleaner. R. 32. In addition, the ALJ cited to a consultative physical examination where the examining physician

6

concluded that Lester could sit up to six hours, stand and walk up to six hours, occasionally lift up to fifty pounds, and occasionally climb, kneel, and crawl. R. 32.

Unlike in Monroe, it is clear from the record that the ALJ considered Lester's allegations regarding the limiting effects of his impairments but discounted them based on objective medical evidence in the record as well as Lester's testimony that he took only Ibuprofen for pain, worked as a cleaner part time, and cared for a disabled relative. R. 32. Therefore, the magistrate judge's finding that Lester's case is distinguishable from Monroe because the ALJ made specific findings about whether his subjective symptoms would cause him to experience episodes of pain or fatigue necessitating breaks in work, is supported by the record. Accordingly, the court finds no error on this issue and Lester's objection is overruled.

**B. Weight Given to Opinions of Medical Sources**

Lester objects to the magistrate judge's finding that substantial evidence supports the ALJ's decision to give great weight to the opinion of the consultative physician and one state agency physician who found that he could do a reduced range of medium work while giving only partial weight to the opinion of another state agency physician who found that Lester could perform a reduced range of light work.

Lester underwent a consultative examination by William Humphries, M.D. His range of motion was normal except for a slightly reduced range of motion in the hands and wrists; his neck and back were tender to palpation but there were no spasms; his straight-leg test was negative; there was moderate enlargement of the MCP and IP joints and diffuse tenderness in the upper extremities; he had no tenderness or deformities in the lower extremities; he had slightly reduced grip strength and mild atrophy in the thenar regions but he could perform

fine manipulations adequately; he had a slightly antalgic gate due to left hip discomfort but could get on and off the exam table without difficulty, briefly heel and toe walk, and perform tandem gait adequately; his strength and reflexes were within normal limits; he had no sensory or motor loss except for mild paresthesia in his feet; his lungs were clear with equal breath sounds; and his heart rate and rhythm were normal with no murmur.

Dr. Humphries concluded that Lester could sit up to six hours, stand and walk up to six hours, lift up to fifty pounds occasionally, and occasionally climb, kneel, and crawl. The ALJ gave the opinion great weight because it was supported by examination results and was consistent with Lester's limited treatment history. R. 32. A state agency reviewing physician, Luc Vinh, M.D., opined that Lester could perform a reduced range of medium work and the ALJ gave his opinion great weight, finding that it adequately accounted for Lester's occasional joint pain. R. 32, 135-148.

On reconsideration, state agency reviewing physician, Jack Hutcheson, M.D., found that Lester could do a reduced range of light work. R. 165-176. The ALJ gave the opinion only slight weight, because the doctor did not cite adequate evidence of exertional limitations more restrictive than those noted by Drs. Humphries and Vinh. R. 32.

Lester argues that the ALJ's decision to give Dr. Hutcheson's opinion less weight is not supported by substantial evidence because the ALJ did not address whether his impairments would cause him to need breaks during the workday and if so, how often the breaks would need to occur. This argument fails for two reasons. First, Dr. Hutcheson did not conclude that Lester needed to take breaks during the day. Rather he concluded that Lester could do a reduced range of light work, specifically finding that he could stand or walk

8

for six hours in an eight-hour workday with normal breaks and sit for a total of six hours in a workday, with normal breaks. R. 173. Thus, even if the ALJ had given the opinion of Dr. Hutcheson great weight, it would not have led to a finding that Lester needed more than normal breaks or would need to lie down during the workday. Second, as discussed above, objective evidence in the record, as well as Lester's testimony that he only occasionally takes Ibuprofen for pain, works a part-time cleaning job, and takes care of a disabled relative, support the conclusion that he does not need to take more than normal breaks in a workday or lie down during the day.

The court finds that the magistrate judge correctly concluded that the ALJ's determination of the weight to give the medical sources was supported by substantial evidence. Accordingly, Lester's objection to the finding is overruled.

## C. Subjective Allegations of Pain

Lester further objects that the magistrate judge failed to address the ALJ's failure to provide an explanation of how Lester's activities of daily living show that he can perform work activity on a consistent basis throughout an eight-hour workday. He argues that the ALJ failed to build a logical bridge between the activities he cited and his conclusion that Lester's allegations are not fully supported by the record.

In Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000), the court observed that it is not enough for an ALJ to state in a conclusory manner that a claimant's testimony regarding limitations placed on his daily activities was unsupported by the medical evidence. Rather, an ALJ must articulate "some legitimate reason for his decision" and "build an accurate and logical bridge from the evidence to his conclusion." Nor is it sufficient for the ALJ to simply

recite medical evidence that he believes tends to discredit a claimant's testimony. Monroe, 826 F.3d at 189. He must provide a clear explanation of his reasons for discrediting a claimant's testimony "such that it will allow meaningful review of his decision." Id. at 190.

In this case, the magistrate judge found that the ALJ followed the two-step process set out in SSR 16-3P[3] and determined that there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce symptoms such as pain, but that Lester's statements concerning the intensity, persistence, and limiting effects of his pain were not supported by the record. The record supports the magistrate judge's conclusion.

The ALJ discussed Lester's reported symptoms, including pain, R. 30-31, but found that other evidence in the record was not consistent with his subjective complaints. The ALJ cited a lack of neurological symptoms on examination, full range of motion in his knees, no atrophy, normal gait and ambulation, lack of reporting or treatment for pain or arthritis, lack of complaints to physicians about pain, unremarkable physical examinations, the fact that he took only Ibuprofen for pain, his part-time job and desire to pick up more hours, his caring for a disabled relative, the results of the consultative examination set out above, and the

---

[3] "SSR 16-3p" refers to Social Security Ruling 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, which provides guidance about how the Social Security Administration evaluates symptoms regarding the intensity, persistence, and limiting effects of symptoms in disability claims. Under the ruling, a two-step process is used to evaluate an individual's symptoms. At Step 1, a determination is made whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. At Step 2, an evaluation is made of the intensity and persistence of an individual's symptoms such as pain, and a determination is made of the extent to which the individual's symptoms limit his ability to perform work-related activities.

opinions of the state agency physicians. R. 31-32. Thus, the ALJ provided a clear explanation of his reasons for discrediting Lester's testimony.

Also, to the extent the ALJ relied on the fact that Lester had engaged in substantial gainful activity, Lester argues that the ALJ did not address the special accommodations he received in that job. Lester cites Payne v. Sullivan, 946 F.3d 1081, 1083 (4th Cir. 1991), for its holding that while earnings from work activities that exceed income guidelines will ordinarily show that the claimant has engaged in substantial gainful activity, the presumption is not to be rigidly applied and can be rebutted. Lester argues that the ALJ relied solely on the income guidelines and failed to address the special accommodations he received on the job that resulted in the work being done at less than substantial gainful activity levels.

The ALJ found that Lester had engaged in substantial gainful activity for approximately one year during the period he was claiming that he was disabled. The ALJ noted that Lester testified that he worked eight hours per day as a personal care assistant and that the work included significant accommodations for his conditions, including the ability to sit or lie down when he needed to, or to adjust his hours. R. 27, 46, 48, 50. However, the ALJ found that there was no corroborating evidence to support his claim regarding accommodations and concluded that Lester engaged in substantial gainful activity with no significant accommodation. Thus, the ALJ did not rely solely on the income levels, but rejected Lester's argument regarding accommodations for lack of corroborating evidence. R. 27. Lester's argument to the contrary is without merit.

The magistrate judge cited the above evidence to conclude that the ALJ's decision regarding Lester's subjective complaints was supported by substantial evidence. Having

examined the record de novo, the court agrees with this finding. Accordingly, Lester's objection to this conclusion is overruled.

## **CONCLUSION**

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ's decision is supported by substantial evidence. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

Entered: 02-21-2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge